UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TIMOTHY MARCUS MAYBERRY, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:21-CV-903-JD-MGG |
| MARK S. LENYO, | |
| Defendant. | |

OPINION AND ORDER

Timothy Marcus Mayberry, a prisoner without a lawyer, filed a complaint under this court's diversity jurisdiction, alleging the attorney he hired to represent him during his state murder trial committed legal malpractice. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

"Under Indiana law, the elements of legal malpractice are: (1) employment of an attorney, which creates a duty to the client; (2) failure of the attorney to exercise ordinary skill and knowledge (breach of the duty); and (3) that such negligence was the proximate cause of (4) damage to the plaintiff." *Van Kirk v. Miller*, 869 N.E.2d 534, 540-

541 (Ind. Ct. App. 2007) (quotation marks and citations omitted). "To establish causation and the extent of harm in a legal malpractice case, the client must show that the outcome of the underlying litigation would have been more favorable but for the attorney's negligence." *Alford v. Johnson Cnty. Comm'rs*, 92 N.E.3d 653, 662 (Ind. App. Ct. 2017) (quotation marks omitted). Mayberry's complaint alleges that he hired Mark S. Lenyo to represent him in his state murder trial; Lenyo owed him a duty; Lenyo breached that duty by not obtaining an expert witness, failing to submit proper jury instructions, failing to object to the state's accusations of robbery, and not properly responding to the state's surprise expert witness, among other things; and as a result Mayberry was damaged. It is too soon, however, to reach the merits of Mayberry's claim because it is unclear whether this case is properly in federal court.

Federal courts are courts of limited jurisdiction. *Hart v. FedEx Ground Package System Inc.*, 457 F.3d 675, 679 (7th Cir. 2006). For a federal court to hear a case with only state-law claims, diversity jurisdiction under 28 U.S.C. § 1332 must be present. Diversity jurisdiction requires that the amount in controversy exceeds $75,000, and that there is complete diversity of citizenship between Mayberry and Lenyo. *See* 28 U.S.C. § 1332. Both aspects of diversity jurisdiction—citizenship and amount in controversy—require a closer look in this case.

Turning to citizenship first, Mayberry alleges he is a citizen of Illinois and Lenyo is a citizen of Indiana and therefore contends diversity of citizenship is present. For individuals, "state citizenship is determined by one's domicile." *Dausch v. Rykse*, 9 F.3d 1244, 1245 (7th Cir. 1993) (per curium). Domicile requires physical presence in a state

2

with the intent to remain there. *See Denlinger v. Brennan,* 87 F.3d 214, 216 (7th Cir. 1996). However, when determining a prisoner's citizenship, "since domicile is a voluntary status, a forcible change in a person's state of residence does not alter his domicile; hence the domicile of the prisoner before he was imprisoned is presumed to remain his domicile while he is in prison." *Sullivan v. Freeman*, 944 F.2d 334, 337 (7th Cir. 1991).

To support his allegation that Lenyo is a citizen of Indiana, Mayberry alleges that Lenyo is licensed to practice law in Indiana and his law office is located in South Bend, Indiana. But reciting Lenyo's place of employment is insufficient to properly allege domicile. Mayberry must properly allege Lenyo's current domicile; where he resides and that he intends to remain there over the long term.

To support his claim that he is a citizen of Illinois, Mayberry attaches several documents and includes his sworn declaration. He attests that he was born in Chicago, Illinois, ECF 1-2 at 3, but at some undisclosed point he moved to Indiana because the attached portion of his driving record shows various Indiana addresses going back to 2006. ECF 1-1 at 6. Mayberry contends, though, that by the time he was charged for the crime he was convicted of, he had become an Illinois citizen. ECF 1-2 at 2. He attests that that he planned to attend Harold Washington College in Chicago, Illinois, in the fall of 2018. *Id.* To that end, he says he tried to obtain an Illinois driver's license in April 2018 but was unsuccessful because he could not access the necessary records. *Id.* He attests that he found an apartment in Chicago, and he registered one car in Illinois in July 2018 and another car in August 2018. *Id.* Mayberry states he was a full-time student at Harold Washington beginning in August 2018 through when he was charged in

3

October 2018.[1] *Id.* As further proof, he notes that the address on the state's chronological case summary when the criminal case was opened gives an Illinois address for him (though it lists him as still having an Indiana driver's license). ECF 1-1 at 5.

The information Mayberry provides does not definitively establish that by the time he was arrested he had changed his domicile from Indiana to Illinois. As the proponent of federal jurisdiction, he bears the burden to prove the facts underlying the basis for federal jurisdiction. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540 (7th Cir. 2006). "Citizenship depends not on residence but on domicile, which means the place where a person intends to live in the long run. It is possible to reside in one state while planning to return to a long-term residence in another state." *RTP LLC v. ORIX Real Estate Capital, Inc.*, 827 F.3d 689, 692 (7th Cir. 2016). "[D]omicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989). The impetus for Mayberry's move to Illinois was to attend Harold Washington College. However, changing states in order to attend college does not automatically change a person's domicile to that new state. *See Polychron v. Airgo, Inc.*, 985 F.2d 563, at *2 (7th Cir. 1991) (unpublished table decision). Thus, the issue is whether Mayberry has adequately established that he changed his domicile to Illinois before he filed this lawsuit.

---

[1] Even though the case was opened in October 2018, Mayberry was not actually arrested until January 2019. *See State v. Mayberry*, No. 71D03-1810-MR-6 (St. Joseph Super. Ct. filed Oct. 3, 2018.)

4

"Courts have created a presumption favoring an individual's old, established domicile over a newly-acquired one." *Ziskind v. Fox*, No. 10 C 4102, 2010 WL 3516117, at *3 (N.D. Ill. Sept. 1, 2010). As the Seventh Circuit has noted:

> Unfortunately, in this age of second homes and speedy transportation, picking out a single state to be an individual's domicile can be a difficult, even a rather arbitrary, undertaking. Domicile is not a thing, like a rabbit or a carrot, but a legal conclusion, though treated as a factual determination for purposes of demarcating the scope of appellate review. And in drawing legal conclusions it is always helpful to have in mind the purpose for which the conclusion is being drawn. The purpose here is to determine whether a suit can be maintained under the diversity jurisdiction, a jurisdiction whose main contemporary rationale is to protect nonresidents from the possible prejudice that they might encounter in local courts.

*Galva Foundry Co. v. Heiden*, 924 F.2d 729, 730 (7th Cir. 1991). The court cannot conclude that Mayberry's Illinois citizenship is established based on the complaint and attached exhibits.

Turning to the amount in controversy, Mayberry does not make a specific demand but alleges generally that he "ha[s] been damaged by incurring approximately $200,000 in debt and possibly hundreds of millions of dollars in potential earnings; plus the cost related to the filing and litigation associated with this suit." ECF 1 at 5. Federal courts usually accept the allegations of damages in a plaintiff's complaint "unless it appears 'to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Smith v. Am. Gen. Life and Acc. Ins. Co., Inc.*, 337 F.3d 888, 892 (7th Cir. 2003) (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).

Here, the court is unable to conclude whether the jurisdictional amount is met because Mayberry does not explain the basis for the claimed damages. Cleary, Mayberry could recover the fees he paid for the representation. But in the complaint,

the only amount specifically allotted to the representation was the $2500 retainer Mayberry paid Lenyo at the beginning of the representation. ECF 1 at 2. He does not otherwise explain how Lenyo allegedly caused him to incur approximately $200,000 in debt. This allegation is insufficient to satisfy Mayberry's burden to establish that federal jurisdiction exists.

For these reasons, the court:

(1) ORDERS Timothy Marcus Mayberry to file supplemental briefing with additional documentary evidence on subject matter jurisdiction as outlined in this order by **September 12, 2022**; and

(2) CAUTIONS Timothy Marcus Mayberry that if he does not respond by the deadline, this case will be dismissed without further notice for lack of subject matter jurisdiction.

SO ORDERED on June 13, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT